THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT P. KEOUGH, Appellant. (Action No. 1.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* NEIL L. SHAPIRO, Appellant. (Action No. 2.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* RICHARD W. SCHAEFFER, Appellant. (Action No. 3.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ELIZABETH D. CARTER, Appellant. (Action No. 4)

Fourth Department, February 25, 1972.

*Michaels, Herman & Boland (Julius M. Michaels* of counsel), for appellants.

*Jack B. Lazarus, District Attorney (George E. Masters* of counsel), for respondent.

GABRIELLI, J. By two counts of an indictment, defendants were charged with co-operative conduct in having caused to be printed, publicly displayed and distributed a publication containing photographs which defied and cast contempt upon the American flag, in violation of section 20.00 of the Penal Law and subdivisions d and f of section 136 of the General Business Law. The latter section, in pertinent part, provides that "Any person who * * * (d) Shall publicly * * * defile, or defy * * * or cast contempt upon either by words or act, or * * * (f) Shall publicly carry or display any emblem, placard, or flag which casts contempt, either by word or act, upon the flag of the United States of America * * * Shall be guilty of a misdemeanor." There is no issue as to the publication and distribution. Neither is there any issue that the *Reporter,* a college periodical, enjoys wide circulation, at least in the college community.

Following certain pretrial motions, defendants entered pleas of guilty to the reduced charge of disorderly conduct. They

now assert that section 136 of the General Business Law is unconstitutional and, additionally, that the section was unconstitutionally applied to the facts in this case. We have concluded that these convictions have infringed no constitutional guarantee nor was the statute erroneously applied to these defendants.

The publication and distribution of the photographs, forming the basis for the charged violations and subsequent guilty pleas, resulted from the co-operative conduct of the defendants in depicting the nude female defendant with the flag draped from her posterior, tightly enfolded in and through the otherwise naked pubic area, with the terminus of the flag partially covering but one of her naked breasts. An examination of the Grand Jury minutes has revealed the presence of verbal attacks and protests made upon the editorial staff of the *Reporter,* the filing of complaints and a prior incident of alleged defilement which had also evoked protests.

The constitutionality of section 136 of the General Business Law was upheld in *People* v. *Radich* (26 N Y 2d 114, affd. 401 U. S. 531) in which a conviction was affirmed where the defendant had publicly displayed the flag in a somewhat lewd manner, albeit in protest of the Vietnam war which was the apparent intendment of the defendants herein. We recognize, of course, that the First Amendment right of free speech is afforded to those who communicate ideas by conduct rather than by words alone and that the guarantee covers the substance rather than the form of communication. However, " if the substance is being conveyed by a form violative of the public health, safety or well-being, then the First Amendment protection is subordinated to the general public interest " (*People* v. *Radich, supra,* p. 119). The flag statute before us is valid, there being a clear legislative intent and purpose to prevent a breach of the peace, and thus prevent the outbreak of violence by discouraging contemptuous and insulting treatment of the flag in public. As in *Radich,* we have concluded that the legitimate public interest to be protected was threatened by the violations of which the defendants were charged and ultimately convicted upon their pleas of guilty. We find no fault with either the indictment or the guilty pleas. Displaying the flag in this disgusting fashion was a rather clear act of defilement in that the flag was dishonored. If these defendants have a sincere ideological motive, they should find other means or ways to express it. Regardless of how these defendants construed their display, a reasonable man would consider the " draping " of the flag in the fashion depicted by the photographs, an act of dishonor

and contempt for the flag. The presently expressed intent of these defendants is not controlling. Upon a trial, the element of intent would not be a requirement of proof to convict, since the defendants were charged with a statute which is *malum prohibitum* (*People* v. *Werner,* 174 N. Y. 132, 134). Furthermore, since we have concluded that the statute is constitutional and that the validity of the indictment has not been successfully challenged, the guilty pleas place a stamp of finality upon these proceedings (*People* v. *Clairborne,* 29 N Y 2d 950; *People* v. *Lynn,* 28 N Y 2d 196, 201, 202).

In this posture of the case it was not required that the indictment charge either a breach of the peace or that there was a present danger of such a breach. However, we take note of the fact that the avowed purpose of these defendants was to express indignation and protest and, realistically, we are mindful of the natural consequence and effect of such a display. We must thus recall the language in one of the first flag defilement cases (*Halter* v. *Nebraska,* 205 U. S. 34, 41) wherein the court stated that "Insults to a flag   *   *   *   and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot": Our statute has been designed to prevent the outbreak of any such violence when precipitated by a defilement or contempt of the flag. The reason for the prohibition is also made clear in *Frohwerk* v. *United States* (249 U. S. 204, 209) wherein the court observed that "the circulation of the paper was in quarters where a little breath would be enough to kindle a flame and that the fact was known and relied upon by those who sent the paper out." (See, also, *Schenck* v. *United States,* 249 U. S. 47.)

The dissenting Justice suggests that the use of the flag in this college magazine is permitted under an unnumbered subdivision of section 136 wherein it is provided that "This section shall not apply to any   *   *   *   newspaper or periodical, on any of which shall be printed, painted or placed a flag". If we were to adopt such a theory, it would be permissible to achieve the basest type of defilement imaginable so long as the flag was made a part of any contemptuous photographs or material — a result most certainly neither intended by the Legislature nor suggested by this quoted exception. This subdivision does, of course, authorize use of the flag by itself for obviously proper purposes. For example, and recognizing the proscription contained in subdivision b of section 136 of the act, the unnumbered subdivision was intended to exclude from prohibited use the printing of a facsimile of the flag alone on

the masthead of newspapers or periodicals offered for sale, wherein, obviously, honor was being accorded the flag and not dishonor, as here.

We find insubstantial appellants' contentions that demurrers to the indictment should have been allowed or, in the alternative, that they should have had an inspection of the Grand Jury minutes and a subsequent dismissal of the indictment.

No less tenuous is appellants' claim of selective enforcement. There has been no showing of a conscious or intentional discrimination. (See *People* v. *Utica Daw's Drug Co.,* 16 A D 2d 12.)

The judgments should be affirmed.

CARDAMONE, J. (dissenting). I dissent and vote to reverse the convictions. By express terms the statute under which these defendants were indicted (General Business Law, § 136) defines the word "flag" as including a "picture or a representation" thereof. It further provides in the following paragraph that, "This section shall not * * * be construed to apply to a * * * newspaper or periodical, on any of which shall be printed, painted or placed, said flag, standard, color, shield or ensign disconnected and apart from any advertisement." It is hard to conceive of clearer legislative language. The periodical in question, being expressly excluded from the application of section 136, cannot serve as a basis for either the indictments or the convictions of these defendants.

Unlike public acts or public words (*People* v. *Radich,* 26 N Y 2d 114, affd. 401 U. S. 531; *People* v. *Street,* 20 N Y 2d 231, revd. on other grounds 394 U. S. 576), writing or printing is not that form of communication which is directed toward inciting or producing *imminent* lawless action, nor is it capable of producing such action, and may not, therefore, be constitutionally proscribed by this statute which refers only to "words and acts" (cf. *Brandenburg* v. *Ohio,* 395 U. S. 444, 447).

However, even if published writings or pictures were capable of inciting a breach of the peace, the printed pictures for which these defendants were indicted were not so "inherently inflammatory as to come within that small class of 'fighting words' which are 'likely to provoke the average person to retaliation, and thereby cause a breach of the peace' [citation omitted]" (*Street* v. *New York,* 394 U. S. 576, 592).

Although these defendants did plead guilty to disorderly conduct, such pleas did not constitute a waiver of their right to challenge the sufficiency of the indictment (*People* v. *Scott,* 3

N Y 2d 148; *People* v. *Shafer,* 30 A D 2d 213). The validity of these indictments should not have been sustained merely on the basis of evidence that several people complained and that such threatened a breach of the peace. An " undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression " (*Tinker* v. *Des Moines School Dist.,* 393 U. S. 503, 508; cf. *Cohen* v. *California,* 403 U. S. 15, 23). The purpose of an indictment is to notify a defendant of the nature and character of the crime charged so that he may prepare his defense (*People* v. *Armlin,* 6 N Y 2d 231, 234; *People* v. *Farson,* 244 N. Y. 413). But neither the statute itself nor the indictments brought notice home to these defendants that a breach of the peace was a necessary element in a violation of section 136 of the General Business Law. Only by an analysis of *People* v. *Radich* (*supra*) and *People* v. *Street* (*supra*) could these defendants have known that breach of the peace was an essential, constitutionally required element in the crime they allegedly committed.

Under these circumstances, the test to be applied in this case should be whether the printed pictures were of such a nature as to create a clear and present danger that they would bring about the breach of the peace which the State has a right to prevent (*Schenck* v. *United States,* 249 U. S. 47, 52). Applying this test, it seems manifest that no such danger reasonably existed and, indeed, since the indictment contained no such allegation, the demurrer to it should have been sustained.

DEL VECCHIO, J. P., and HENRY, J., concur with GABRIELLI, J.; CARDAMONE, J., dissents and votes to reverse the judgments and dismiss the indictments in an opinion.

Judgments affirmed.